# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

  v.              **Case No. 08-CR-247**

**ORLANDO BORGES**
   **Defendant.**

## DECISION AND ORDER

  Defendant Orlando Borges, charged with possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), and possessing cocaine with intent to distribute, 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), moved to suppress evidence, challenging the lawfulness of a traffic stop pursuant to which officers located cocaine on his person. That discovery, in turn, led to the seizure of additional evidence the government seeks to use against him. The magistrate judge handling pre-trial proceedings in the case held a hearing, at which the parties presented evidence on the circumstances leading up the stop. The magistrate judge then issued a recommendation that the motion be granted, concluding that the police lacked probable cause to stop and arrest defendant.

  The government objected to the recommendation, and defendant responded in support. Although the parties agreed that the issue for resolution was the lawfulness of the stop, they disagreed over the appropriate standard for making that determination – reasonable suspicion or probable cause. In order to decide that issue, I required additional information on what occurred after the stop. See United States v. Garcia, 376 F.3d 648, 650 (7th Cir. 2004) (stating that "the reasonableness of a search or seizure depends on what actually happens rather than

what could have happened"). If the police immediately arrested and searched defendant, as the magistrate judge assumed, the probable cause standard would apply. If, on the other hand, the officers stopped defendant and then obtained consent to search, reasonable suspicion appeared to be the appropriate standard. The record contained no evidence tending one way or the other; the testimony at the hearing before the magistrate judge ended with the initiation of the traffic stop.

I therefore held a supplemental hearing, at which the parties presented evidence as to the officers' conduct after they pulled defendant over. Based on the testimony adduced at both hearings, and exercising de novo review, see Fed. R. Crim. P. 59(b)(3), I now conclude that the officers had reasonable suspicion to pull defendant over, that he consented to the search pursuant to which the officers discovered the cocaine on his person, and thus deny the motion.

## I. FACTS

On June 23, 2008, City of Milwaukee Police Department ("MPD") Officer Ryan Bergemann made contact with a confidential informant ("CI"), who had been arrested on a theft offense and wanted to work off the charge. The CI told Bergemann that an individual known as "Sammy" sold him cocaine and heroin. The CI described Sammy as a Hispanic male, about thirty years old, 5'4", 140 pounds, with a prosthetic right arm. Bergemann put this information into the MPD "crimes computer" to come up with a possible suspect, and the computer identified defendant as matching the physical description provided by the CI. Bergemann presented a photo of defendant to the CI, who identified the person depicted as Sammy. Bergemann had no previous knowledge of defendant or a dealer named "Sammy."

The CI told Bergemann that he had been purchasing cocaine and heroin from Sammy for about a year; that he obtained "dime" quantities of cocaine from Sammy; that during the

2

purchases Sammy kept the controlled substances concealed on his person; that Sammy drove a silver minivan; and that Sammy lived in the area of 13th and Becher Streets. Armed with this information, Bergemann placed defendant's name in the City of Milwaukee "auto process computer," which checks for plates, parking violations, etc., and discovered that defendant operated a silver Plymouth minivan, plate number 238 MVT. Bergemann also came up with an address for defendant, 4117 West Morgan Avenue. On the evening of June 23, 2008, Bergemann attempted to located the silver minivan in the area of 13th and Becher, where the CI said Sammy lived, but was unable to do so. However, at about 10 or 11:00 p.m. that night Bergemann and his partner did see the minivan parked directly behind the building located at 4117 W. Morgan, the address produced by the MPD computer. Bergemann also attempted to gain information on a phone number the CI said Sammy used, but the number just came back as listing to a cell phone.

Bergemann, working with other officers in the anti-gang and vice units, decided to set up a buy/bust on June 24, 2008, at about 7:00 p.m. The officers' plan involved the CI calling the target, ordering cocaine, and then when the target left his house en route to the meet location of South 5th and Chase Streets, officers would conduct a traffic stop.

The CI, in the company of MPD Detective John Karlovich, placed the call from a pay phone located at 5th and Chase at about 6:30 p.m. Karlovich heard the CI's side of the conversation but could not confirm what was said because the CI spoke in Spanish. Karlovich and his partner then took the CI to the area of 13th and Becher in an undercover vehicle, where they were able to locate defendant's silver minivan. After about twenty or thirty minutes, defendant and a female (later identified as defendant's girlfriend) left the residence located at 2077 S. 13th Street (on the corner of 13th and Becher), entered the silver minivan and drove

3

southbound on 13th Street, then made a left turn to travel east on Becher, in the direction of the meet location. Karlovich broadcast defendant's departure on the police radio, then followed defendant for several blocks before uniformed Officer Michael Slomczewski pulled defendant over at 601 West Becher, about three or four blocks, or ½ mile, from the meet location.

Slomczewski hit the lights and siren on his unmarked squad, and defendant pulled over. Slomczewski approached on the driver's side, made contact with defendant (the driver) and asked him to step out of the car. Slomczewski then asked defendant to walk with him to the sidewalk. Three other squad cars arrived on the scene, parking behind Slomczewski's car. None of the officers drew their guns, and defendant was not handcuffed.

Slomczewski asked defendant if he had anything illegal in his vehicle or on his person, and defendant said no. Slomczewski then asked defendant for consent to search his person, and defendant agreed. In defendant's right sock Slomczewski located a baggy containing numerous smaller bags of suspected cocaine. One of the officers asked defendant what was in the bag, and defendant replied cocaine. The officers then arrested defendant and placed him in a squad car.[1]

---

[1]At the supplemental hearing, defendant's girlfriend, Myra Mayoli, testified that the officers surrounded the van and "bum rushed" them with guns drawn, shouting commands. She stated that one of the police vehicles blocked the van from the front, and the officers physically pulled defendant out of the vehicle and over to the curb, where they searched him. I found Slomczewski's testimony that he asked defendant to exit the car and walk to the curb, where defendant consented to the search of his person, more credible. Slomczewski testified clearly and forthrightly, with no hint of exaggeration. Although Bergemann did not hear defendant provide consent, he was able to corroborate that defendant exited the car and walked to the sidewalk on his on volition, rather than being physically removed. Bergemann also corroborated Slomczewski's testimony that the officers did not approach with weapons drawn or block the van in. Bergemann likewise testified clearly and consistently, with no hint of exaggeration. Mayoli's testimony, on the other hand, had problems. First, she admitted that at least at the beginning of the encounter she was not paying attention to what was going on, and that defendant was playing very loud music in the van. Second, as defendant's girlfriend

4

Bergemann testified that he directed the stop because the officers "knew [defendant] had narcotics on him because he was going to the meet spot with the narcotics that he we had ordered." (Nov. 20, 2008 Hr'g Tr. at 12.) The officers observed no traffic violations; the stop was based solely on the drug investigation initiated by the CI.[2]

## II.  DISCUSSION

**A.    The Officers Conducted a Terry Stop**

Courts have identified three types of citizen-police encounters. The first is a full-blown arrest, for which the police need "probable cause" to believe the suspect has committed or is committing a crime. The second is an investigatory, or Terry, stop, which involves a brief, non-intrusive detention and must be supported by "reasonable suspicion" that the person has committed or is committing a crime. The third is a consensual encounter, which involves no restraint on the citizen's liberty and need not be justified by any quantum of suspicion. See, e.g., United States v. Johnson, 910 F.2d 1506, 1508 (7th Cir. 1990).

---

and the mother of his child, Mayoli had a motive to slant her testimony in his favor. Finally, the circumstances of the stop clearly support the officers' version. The officers had no reason to approach defendant in a "tactical" manner. The record contains no indication defendant was armed or dangerous; he is physically much smaller than the officers; and he has the use of only one arm.

[2]At the hearing before the magistrate judge, defendant testified that on June 24, 2008, at about 6:30 p.m., a person he knew as "Volteo" called him at his girlfriend's house, and the two discussed Volteo providing defendant with an eight-ball of cocaine. Defendant said that he was going to use the cocaine to party with his girlfriend. He said that the drugs found on his person after his arrest were also for personal use, but not enough for two people. Defendant denied selling drugs to Volteo. Defendant's testimony sheds little light on the issue before me. I do note, however, that defendant's claim that the purpose of his trip was to buy more cocaine, when he already had a baggy containing eight smaller bags of cocaine in his sock, makes little sense.

5

This case involves the second type of encounter.³ The officers effected the stop as part of their drug-trafficking investigation. See United States v. Fiasche, 520 F.3d 694, 697-98 (7th Cir.), cert. denied, 129 S. Ct. 281 (2008) (upholding Terry stop of car as part of drug investigation). The officers did not box defendant in, draw their weapons or approach in a hostile manner; nor did they place their hands on defendant or immediately take him into custody. Rather, Slomczewski asked defendant to step out of the car and walk to the curb. See United States v. Rivers, 121 F.3d 1043, 1045 (7th Cir. 1997) (holding that police officers may ask occupants to step out of a vehicle during a Terry stop); see also United States v. Hendricks, 319 F.3d 993, 1004 (7th Cir. 2003) (holding that an officer may, as part of a Terry stop, "order the detainee to exit the vehicle").

Slomczewski then requested permission to search defendant's person, which defendant granted.⁴ See, e.g., United States v. Burton, 334 F.3d 514, 518-19 (6th Cir. 2003) (holding that asking for consent to search did not unreasonably extend the scope of a traffic stop). The request came promptly and was well within the permissible scope of the stop. See United States v. Price, 184 F.3d 637, 640 (7th Cir. 1999) (holding that the court must examine whether the officers' action was justified at its inception and whether it was reasonably related in scope

---

³In her recommendation, the magistrate judge stated that defendant was placed under arrest immediately after his vehicle was stopped, and that the record contained no evidence that he consented to a search. It was because the record contained no evidence, either way, on these issues that I held a supplemental hearing. Without knowing what the officers did after they pulled defendant over I could not determine whether this seizure should be analyzed as an arrest or a Terry stop.

⁴Defendant does not contest the voluntariness of his consent.

6

to the circumstances which justified the interference in the first place).[5] The officers suspected that defendant was on his way to deliver cocaine to the CI, who stated that defendant typically carried the drugs on his person. The officers' discovery of suspected cocaine in defendant's sock provided probable cause for arrest.

The officers conducted a stop that was brief, minimally intrusive, and designed to confirm their suspicions quickly. See, e.g., United States v. Robinson, 30 F.3d 774, 784-85 (7th Cir. 1994). The seizure did not ripen into an arrest until after the discovery of the cocaine.

**B.    Reasonable Suspicion Supported the Stop**

The next question is whether the police had reasonable suspicion to pull defendant over in the first place.[6] As indicated above, under Terry a police officer can stop a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity is afoot. Price, 184 F.3d at 640. "Reasonable suspicion has been defined as 'some objective manifestation that the person stopped' is involved in criminal activity." Id. (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). It "lies in an area between probable cause and a mere hunch." Fiasche, 520 F.3d at 697. The Supreme Court has further explained that:

> Reasonable suspicion is a less demanding standard then probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information

---

[5]But cf. United States v. Childs, 277 F.3d 947, 954 (7th Cir. 2002) (citing Ohio v. Robinette, 519 U.S. 33 (1996)) (stating that questions asked during a Terry stop need not be related to the basis for the stop).

[6]During oral argument after the supplemental hearing, defendant appeared to concede that the appropriate standard was reasonable suspicion. He nevertheless argued that the evidence failed to meet that standard.

7

that is less reliable than that required to show probable cause.
Alabama v. White, 496 U.S. 325, 330 (1990).

In determining whether the police had reasonable suspicion, the court considers the totality of circumstances known to the officers at the time of the stop. Price, 184 F.3d at 640 (citing United States v. Quinn, 83 F.3d 917, 921 (7th Cir. 1996)). Where, as here, the police rely on information from an informant, the court considers how detailed the information was, how reliable it was, and the degree to which it was corroborated by other information available to the officers. United States v. Navarro, 90 F.3d 1245, 1253 (7th Cir.1996). The court may place greater stock in information from a known informant, as opposed to an anonymous tipster. See United States v. Wooden, 551 F.3d 647, 649 (7th Cir. 2008) ("Knowing a tipster's name increases the chance that he can be held accountable (both state and federal governments make it a crime to tell material lies to law-enforcement officials)[.]"); see also United States v. Oliva, 385 F.3d 1111, 1114 (7th Cir. 2004) ("An unverified tip from a known informant must be judged, like all other information supporting a search, in light of the totality of the circumstances.").

Defendant relies primarily on Alabama v. White. In that case, the police, based on an anonymous tip, stopped the defendant's car then obtained consent to search, recovering drugs. The Court found that the tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion for the stop. 496 U.S. at 326-27. Although the Court considered it a "close case," it upheld the stop based on the tipster's ability to predict the defendant's future behavior. Id. at 332. Specifically, the Court noted that the defendant traveled the most direct route to the location named by the tipster. Defendant argues that his case is different because the police stopped him well before he got to the meet site, preventing

8

the police from gaging the accuracy of the CI's prediction.

The problem with defendant's argument is that this case does not involve an anonymous tipster, like White did. Courts distinguish between the two situations and generally require less corroboration when the informant is known to the police. See, e.g., United States v. Kent, 531 F.3d 642, 648-49 (8th Cir. 2008); United States v. Barnes, 506 F.3d 58, 64 (1st Cir. 2007); United States v. Brown, 496 F.3d 1070, 1075 (10th Cir. 2007) (citing United States v. Elmore, 482 F.3d 172, 180 (2d Cir. 2007)); see also Navarro, 90 F.3d at 1252 n.2 (discussing White and noting that "an unverified tip from a known informant might be sufficiently reliable to justify a Terry stop but not a full search that requires probable cause"). The reason is clear – an anonymous tipster who mischievously targets an innocent person cannot be held accountable; thus, the police should obtain significant corroboration before seizing a citizen. But when the informant is known, and thus may be charged with lying to the police, less corroboration will suffice.[7]

The government has shown that the officers possessed sufficient information to justify the stop in this case. The CI provided relatively detailed, first-hand information, including a physical description of defendant, the vehicle he drove and where he lived. Bergemann was

---

[7]The Seventh Circuit addressed this issue in the context of search warrants in United States v. Koerth, 312 F.3d 862, 870-71 (7th Cir. 2002):

> Unlike the confidential (undisclosed) informants in the cases cited by the defendant, [the informant's] identity was made known to the magistrate judge at the probable cause hearing. Though an anonymous tip "alone seldom demonstrates the informant's basis of knowledge or veracity," Alabama v. White, 496 U.S. 325, 329 (1990), a magistrate in the exercise of sound judgment is entitled to give greater weight to a tip from a known informant, who can be held responsible should he be found to have given misleading information to police officers, and thus has an incentive to provide truthful information to the detectives.

9

able to corroborate much of what the CI said, using the MPD "crimes computer" to provide a name for and a photo of the suspect, and the "auto process computer" to confirm that defendant drove a silver Plymouth minivan. Although it appeared from Bergemann's investigation that defendant's residence address was on West Morgan rather than 13th and Becher Streets (where the CI said defendant lived), the officers did on the day of the buy/bust see defendant exit the building located at the corner of 13th and Becher, providing support for the CI's statement.

The officers did not simply rely on the CI's word that defendant dealt drugs but rather staged a buy/bust operation, in which the CI arranged to meet defendant at 7:00 p.m. on 5th and Chase. It is true that Karlovich could not due to the language barrier understand what the CI said to defendant during the call, but officers conducing surveillance saw defendant exit the residence at 2077 S. 13th Street shortly before 7:00 p.m., get in the silver mini-van and drive towards the meet site, just as the CI said he would. Significantly, the officers kept the CI with them, ensuring that he could not slip away if he had misled them. If defendant had shown up carrying candy rather than cocaine, the CI would have had much explaining to do.

Defendant makes much of the fact that the officers stopped him several blocks away from the meet site. While it is possible that he was driving somewhere else, reasonable suspicion is not certainty or even probability; conduct capable of innocent explanation may still give rise to reasonable suspicion when considered in light of all the circumstances. Fiasche, 520 F.3d at 697. The witnesses all testified that defendant took a route consistent with the meet location, and the officers stopped him a fairly short distance away.

In United States v. Huebner, 356 F.3d 807, 816 (7th Cir. 2004), the court rejected a similar argument, under the higher probable cause standard, when the stop occurred much

10

father away from the meet site than in this case. In Huebner, a first-time informant provided information on his drug supplier and arranged a deal. On the day of the buy, surveillance agents saw the defendant leave his residence, stop at a storage facility nearby, go inside for about five minutes, then re-enter his vehicle. As he started to drive away, agents stopped, arrested and searched him, recovering cocaine. Id. at 810. In seeking suppression, the defendant argued that the agents stopped him far from the meet site arranged by the CI, but the court noted that the stop occurred at about 3:00 p.m., the deal was scheduled for 3:30 p.m., and the meet site was located about thirty minutes away. Id. at 816. Combined with the other information provided by the informant, the court found probable cause for the search. Id. at 814-16; see also Navarro, 90 F.3d at 1253-54 (finding probable cause for traffic stop on highway after vehicle entered Milwaukee County where the CI said the defendant was delivering cocaine to Milwaukee).

Defendant also notes that the CI was previously unknown to the police. However, "that alone does not make the informant's information unreliable." Oliva, 385 F.3d at 1114. As noted above, the police corroborated much of the CI's information about defendant and had the CI arrange a buy, under the direction of law enforcement. See id. at 1114-15 (noting that the buy was done under the direction of agents rather than by the informant on his own). Defendant then took the actions the CI said he would. See id. (finding probable cause where the defendant proceeded as the informant expected). Defendant complains that the police corroborated only innocent details, but courts have held that if an informant is shown to be right about some things it may be assumed that he is right about other facts he has alleged, including that the object of the tip is engaged in criminal activity. See, e.g., United States v. Solomon, 432 F.3d 824, 828 (8th Cir. 2005); United States v. Ritter, 416 F.3d 256, 272 (3d Cir.

11

2005); United States v. Ganser, 315 F.3d 839, 843 (7th Cir. 2003). Such corroboration can be sufficient to provide reasonable suspicion, even if the police cannot verify all of the tip's details or find some of them to be wrong. See, e.g., Price, 184 F.3d at 641.

The information here may not have been sufficient to justify a full arrest or search, but it was sufficient to justify pulling defendant over and asking for his consent. Once the police located cocaine on defendant's person, they were justified in arresting him. The motion to suppress must therefore be denied.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to suppress is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is scheduled for **STATUS** on **Wednesday, April 1, 2009, at 11:30 a.m.**

Dated at Milwaukee, Wisconsin, this 26th day of March, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

12