UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                       **Case No. 08-CR-247**

**ORLANDO BORGES**
       **Defendant.**

---

## SENTENCING MEMORANDUM

Defendant Orlando Borges pleaded guilty to possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1), and I set the case for sentencing. In imposing sentence, I first calculated the advisory sentencing guideline range, then determined an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Smith, 562 F.3d 866, 873 (7th Cir. 2009).

### I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6), then subtracted 2 levels for acceptance of responsibility, § 3E1.1, for a final level of 12. Coupled with defendant's criminal history category of III, level 12 produces a guideline range of 15-21 months. The parties agreed with these calculations, which I found correct and adopted accordingly.[1]

---

[1] Defendant asked that I treat him as a category II offender under U.S.S.G. § 4A1.3(b). I considered the argument in imposing sentence under § 3553(a). See United States v. Turner, 569 F.3d 637, 641 (7th Cir. 2009) (explaining that guideline departures are obsolete, but the district court may use departure provisions like § 4A1.3 for guidance in exercising sentencing discretion under § 3553(a)).

## II. SECTION 3553(a)

**A.     Sentencing Factors**

In imposing sentence, the district court must consider all of the factors set forth in 18 U.S.C. § 3553(a), United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008):

(1)     the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. § 3553(a)(2).  While the guideline range will generally be the starting point in making this

2

determination, the district court may not presume that the guideline sentence is the correct one. Nelson v. United States, 129 S. Ct. 890, 892 (2009); Gall v. United States, 128 S. Ct. 586, 596-97 (2007); Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Rather, the court must independently determine an appropriate sentence based on all of the circumstances of the case and under all of the § 3553(a) factors. See United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert. denied, 129 S. Ct. 474 (2008); United States v. Taylor, 586 F. Supp. 2d 1065, 1068 (E.D. Wis. 2008).

**B.  Analysis**

    **1.  The Offense**

Police pulled defendant over as part of a drug investigation and obtained consent to search his person and vehicle, from which they seized cocaine and marijuana. Police also obtained consent to search defendant and his girlfriend's apartments. In the girlfriend's apartment, police found a loaded Taurus 9 mm pistol under the mattress. In defendant's apartment, they found the box for the gun, gun cleaning materials, ammunition, baggies, a scale, and a grinder with cocaine residue.

In a post-arrest statement, defendant admitted that the gun belonged to him. He claimed that a friend gave it to him as collateral for a loan, and he put it under his girlfriend's mattress. Regarding the box and gun paraphernalia found in his apartment, defendant stated that his friend gave him these items too. Defendant admitted that he knew he was not supposed to have a gun because he was a convicted felon. He further admitted that the drugs were his but denied that he sold drugs.

In his statement to the PSR writer, defendant stated that he loaned a friend $50, and the

3

friend gave him the gun as collateral. He indicated that he told his friend no at first, but then agreed to take the gun. He also stated that he was unable to fire the gun due to the fact that he has a prosthetic right (dominant) arm.

I was skeptical of defendant's explanation. It seemed strange that he would have the box, ammunition and gun cleaning materials if he was just holding the gun as collateral. Why would his friend provide those items if the gun was being held only temporarily until the loan was repaid, rather than being possessed as a weapon? It also seemed strange that defendant would have those materials in his apartment, and the gun at his girlfriend's. Regardless of how he came to have it, defendant was barred from firearm possession based on his previous felony conviction for recklessly endangering safety.

Finally, although the government did not seek an enhancement for possessing the gun in connection with another felony offense, see U.S.S.G. § 2K2.1(b)(6), the discovery of eight dime bags of cocaine on defendant's person and baggies, a scale, and a grinder with cocaine residue in his apartment raised concerns about drug trafficking activity. Further, while this case was pending, defendant was arrested for possession of heroin, a charge that was pending at the time of sentencing.

### 2. The Defendant

Defendant was thirty-six years old with a not insignificant prior record: second degree recklessly endangering safety in 1999; resisting/obstructing in 2004; battery in 2005; and two disorderly conduct citations in 2008. As indicated, he also had a pending state drug case. As his record and the circumstances of this case suggested, defendant also had a long history of substance abuse.

Despite this record, defendant presented with many positive qualities as well. He was

4

in a long-term relationship and had a two year old daughter with his girlfriend. Defendant's girlfriend described him as a kind person who cared for his children. Defendant had four other children from previous relationships, of whom he had legal custody. He received no child support from the mothers, who were not involved in the children's lives. Defendant's brother and girlfriend both stated that defendant was going to counseling, focusing on his kids and trying to make positive changes in his life before his arrest on the state charge shortly before sentencing in this case. Following that arrest, the children were returned to their mothers; more permanent arrangements awaited the outcome of this and the state case.

Defendant's physical health and mental condition were also relevant to the sentencing determination. In 1995, defendant was electrocuted while helping his uncle, resulting in loss of his right arm, extensive burns and other injuries, which required his hospitalization for nearly a year. As a result of the accident, he had a prosthetic right arm and burn scars over much of his body. More recently, he developed back problems. Deemed disabled since 1995, defendant received social security benefits.

Defendant had a history of depression, arising in part out of his injuries and resulting disability, for which he received treatment including medication. As alluded to above, he also had a history of serious substance abuse, exacerbated by his need for pain medication after the accident. Defendant made efforts at treatment, participating in a methadone program for many years, as well as counseling while on bond in this case. However, he tested positive twice while this case was pending and then picked up the new drug charge. Clearly, further treatment of mental health and substance abuse was in order. Defendant also needed to further his education, as he dropped out of school, and he was making efforts towards a GED prior to his arrest.

5

### 3. The Sentence

The guidelines recommended 15-21 months in prison. Defendant made several arguments for a lesser sentence, while the government sought a sentence at the high end or above.

Defendant first argued that he should be sentenced consistent with a lower guideline range, arguing that criminal history category III overstated the severity of his record. See U.S.S.G. § 4A1.3(b)(1) ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.").[2] Defendant noted that 3 of his 4 criminal history points arose out of a ten year old conviction for reckless endangerment. But for that case, he would have been in category I. He asked me to, in effect, split the difference and treat him as a category II offender.

The Commission provides as a departure example a situation where the defendant has minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. See U.S.S.G. § 4A1.3 cmt. n.3. This case did not fit the example. As discussed above, defendant had numerous contacts

---

[2] Defendant noted that under recent Seventh Circuit case-law, see, e.g., United States v. High, No. 08-1970, 2009 WL 2382747, at *2 (7th Cir. Aug. 5, 2009), his 1999 second degree recklessly endangering safety conviction did not qualify as a crime of violence, resulting in a base offense level of 14 rather than 20 under U.S.S.G. § 2K2.1. The PSR agreed. The government, while acknowledging the case-law, noted that the 1999 offense involved defendant stabbing another man in the chest with a steak knife, which sounded like violent conduct in the ordinary sense of the term. While classification of an offense for purposes of the guidelines requires a categorical approach, I may under § 3553(a) consider the specific conduct involved in a prior conviction. For the reasons stated later in this decision, defendant's 1999 conviction did not suggest that he posed a serious risk of gun violence, necessitating a greater sentence.

6

since the 1999 conviction, including a battery, which scored 1 point, and a resisting/obstructing and two disorderly conduct cases, which did not score. Given that defendant had consistently been in trouble over the past ten years, I could not conclude that category III overstated the severity of his record or the likelihood that he would re-offend. Under these circumstances, there was no basis for imposition of a lesser sentence under § 3553(a) based on this argument.

Defendant also argued that there were extenuating circumstances regarding his 1999 endangering safety case. He stated that he stabbed the victim in the course of attempting to remove his children from an unsafe situation.[3] I had no reason to doubt what defendant said about that offense; however, from the perspective of the guidelines' recommendation, it did not make much of a difference. He received 3 criminal history points for the offense, but he received the same base offense level as any other felon, regardless of whether the predicate involved any violence.

Defendant's explanation for his conduct suggested that he posed a lesser risk of violence than the bare facts of the case listed in the complaint indicated. However, I also had to consider in this regard the other entries on defendant's record, including the 2004 resisting/obstructing, which involved his attempt to push an officer while shouting profanities, and his 2005 battery conviction, which involved his striking an autistic, eleven year old boy. The battery case may also have involved an attempt to protect his child, as the defense pre-

---

[3]Defendant stated that the children's mother left them in the custody of a drunk male acquaintance, who would not allow defendant to take them. Defendant stated that he argued with the man, who hit him with a board. Defendant responded by grabbing a knife and stabbing the man.

7

sentence report discussed,[4] but defendant had to learn better means of coping with these types of situations. His 2008 disorderly conduct cases involved verbal conduct, but it nevertheless appeared that he was somewhat out of control on both occasions. I agreed with the suggestion in the defense report of anger management treatment.

Defendant next argued that, based on the offense conduct and his physical conditions, he posed little risk with a firearm. He first repeated the claim initially made in his post-arrest statement – that he possessed the gun only as collateral for a loan he made to a friend. As indicated, I had doubts about that explanation; it made little sense that he would have the box, ammunition and cleaning supplies if he was simply holding the gun as collateral. Defendant presented several reasons why his story made sense: (1) he was otherwise cooperative with law enforcement during the encounter; (2) the gun was located in his girlfriend's apartment, not on his person or in vehicle while he was out engaging in drug-related activity; (3) none of his previous cases involved a gun; and (4) his ability to use a gun was significantly compromised by his disability.

The first two reasons did not tell me all that much; the fact that he consistently told this story did not necessary make it true, and people often keep guns in their residences for use as a weapon or for protection. The discovery of ammunition and cleaning materials suggested that defendant's possession was for those purposes. He would not need bullets as collateral, nor would he have any occasion to clean a gun he did not intend to keep.

I did take into account the fact that defendant had no history of gun use or violence, always a significant concern in these types of cases. I also took into account his disability. It

---

[4]Defendant stated that he struck the boy after the boy inappropriately touched his daughter.

8

appeared, based on the PSR and defense report, that defendant's ability to handle, point or fire a gun was severely limited. The right arm prosthetic was largely cosmetic. He also had problems with his left hand, resulting in diminished ability to grasp and hold objects.[5] I also took into account the challenges defendant faced due to his disabilities. Aside from the loss of a limb, he suffered chronic pain and compromised speaking ability.

In his sentencing memo and the defense report, defendant discussed the intersection of his pain, depression and substance abuse issues, and I agreed that treatment in this regard was warranted. The results of his efforts in the community had been uneven, but he did seem motivated for treatment. I did not see these issues as impacting on the specific offense conduct in this case. It was also somewhat unclear how these issues affected his risk of recidivism.[6]

Finally, I took into account defendant's importance to his children, and the impact a sentence would have on them. I also considered the significant community service he had recently completed, discussed detail in the defense report, including volunteering at the United Community Center, Life Changers' program. Defendant presented a DVD of one of these presentations.

On consideration of all of these factors, I concluded that a prison sentence was necessary in order to satisfy the purposes of sentencing. While the nature of defendant's prior

---

[5] Diminished, but not, so far as the record showed, precluded.

[6] The government stressed defendant's drug-related arrest while on bond in this case. Defendant stated that the new offense involved his attempt to trade heroin for methadone on the street, after he was terminated from the methadone program. Perhaps this new offense did arise out of defendant''s long-standing drug problem, but it nevertheless cut against his argument for leniency in this case. I also found this continued drug-related conduct inconsistent with defendant's professed devotion to his children.

9

convictions did not suggest that he posed a great threat with a gun, prison was needed to promote respect for the law and deter. Defendant had consistently been trouble over the past ten years, which continued on bond in this case. Further, while defendant's disability likewise suggested a reduced threat, I found defendant's explanation for his possession unconvincing. Finally, his continued involvement with narcotics undercut his argument based on his family ties and responsibilities.

Based on the mitigating factors discussed, I found that a sentence slightly below the guidelines' recommendation would suffice to satisfy the purposes of sentence. I therefore imposed a sentence of 12 months and 1 day, which under all of the circumstances I found sufficient but not greater than necessary. This sentence varied from the guidelines by just 1 level, and because it was supported by the particular facts of the case discussed herein it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

### III. CONCLUSION

I therefore committed defendant to the custody of the Bureau of Prisons for 12 months and 1 day. I recommended that he be placed at an institution as close to his home as possible and participate in any substance abuse treatment available. On release, I ordered him to serve a three year supervision term, with drug aftercare and mental health treatment conditions. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 20th day of August, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge